DONNA TAMANAHA, Assistant U.S. Trustee (WI#1013199)
U.S. Department of Justice
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-3484
Telephone: (415) 705-3333
Facsimile: (415) 705-3379
Email: Donna.S.Tamanaha@usdoj.gov

Attorneys for Acting United States Trustee
 AUGUST B. LANDIS

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re ) | No. 10-13676 AJ7 |
| ) | |
| ) | Chapter 7 |
| **ANGELO P. ACCORNERO** ) | |
| **LORI E. ACCORNERO,** ) | Date: January 14, 2010 |
| ) | Time: 9:00 a.m. |
| ) | Place: 99 South E Street |
| Debtors. ) | Santa Rosa, California |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE FOR
ABUSE UNDER 11 U.S.C. § 707(b)(1), (2) & (3)**

August B. Landis, Acting U.S. Trustee for the Northern District of California - Region 17, ("U.S. Trustee") hereby submits this memorandum in support of his motion to dismiss this case as an abuse of the provisions of chapter 7 of Title 11 of the United States Code ("Bankruptcy Code").

**I.  PRELIMINARY STATEMENT**

The Debtors, Angelo P. And Lori E. Accornero, are a married couple with two dependents. Mr. Accornero is a police officer with the City of Petaluma, whose monthly gross income is $10,350. Mrs. Accornero is a retired police officer, receiving disability retirement benefits in the monthly amount of $3115. Mrs. Acconero also operates a parties supplies business.

The presumption of abuse arises under Section 707(b)(2) of the Bankruptcy Code primarily because Debtors excluded $3115 in income derived from Mrs. Accornero's disability insurance benefits. Adding Mrs. Accornero's disability benefits to current monthly income, with no other adjustments to the

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3)                                          - 1 -

Case: 10-13676   Doc# 21-1   Filed: 12/08/10   Entered: 12/08/10 13:56:46   Page 1 of 8

Debtors' means test, results in, at the minimum, disposable income of $2,193 per month. In a sixty month plan, disposable income of $2,193 per month would generate total dividends of $131,591, an amount more than sufficient to pay in full Debtors' unsecured debt of $102,331. No special circumstances to rebut the presumption have been shown.

The U.S. Trustee further contends that dismissal is also appropriate because the totality of the Debtors' financial circumstances demonstrates abuse under Section 707(b)(3)(B) of the Bankruptcy Code. Even with minor adjustments to Debtors' income and expenses, as reflected in Schedules I and J, Debtors have the ability to repay at least $1083 per month. In a sixty month plan, this would result in total dividends of $64,980, which would constitute a 63% distribution to creditors based upon total unsecured debt of $102,331.

## II. POINTS & AUTHORITIES

Prior to the enactment of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Court could dismiss a case under Section 707(b) if it found that a debtor's case was a "substantial abuse" of the provisions of chapter 7. Section 707(b)(1) now provides for dismissal of a case with primarily consumer debt for mere "abuse." A chapter 7 case may be dismissed for abuse under Section 707(b)(1) pursuant to either Section 707(b)(2) or 707(b)(3). The presumption in favor of relief for the debtor found in the previous version of the statute no longer exists. In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009).

Section 707(b)(2) provides objective standards – the means test – for courts to determine whether abuse exists. If a case is presumed abusive, it will be dismissed without the need for further evidence unless the debtor can show "special circumstances" to rebut the presumption. Alternatively, a case may be dismissed under Section 707(b)(3)(A) if it was filed in bad faith or under Section 707(b)(3)(B) if the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3)(A), (B); See In re Egebjerg, 574 F.3d at 1048; In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006); In re Mitchell, 357 B.R. 142, 150 (Bankr. C.D. Cal. 2006). The "abuse" standard of Section 707(b)(3) expressly applies when the presumption of abuse under the Means Test of Section 707(b)(2) does not arise, so that "passing" the Means Test does not preclude a discretionary finding of abuse by the

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3) - 2 -

Case: 10-13676   Doc# 21-1   Filed: 12/08/10   Entered: 12/08/10 13:56:46   Page 2 of 8

court based on bad faith or the totality of the circumstances. In re Egebjerg, 574 F.3d at 1048; In re Lamug, 403 B.R. 47, 53 (Bankr. N.D. Cal. 2009).

Dismissal under section 707(b) is appropriate only if the debtor has primarily consumer debt, defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The Ninth Circuit has determined that a debtor has primarily consumer debt when more than half of the dollar amount owed is consumer debt. See Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988).

The Debtors have identified in their petition that their debts are primarily consumer debt. Based upon a review of Debtors' Schedules, the listed debt appears to be for a personal, household, or family purpose.

### A. Including Mrs. Accornero's monthly disability benefits of $3115 results in the Presumption of Abuse Arising with $2,193 in Monthly Disposable Income.

Section 707(b)(1) provides that the court may dismiss a case filed by an individual whose debts are primarily consumer debts if it finds that granting relief would be an abuse of the provisions of chapter 7. 11 U.S.C. § 707(b)(1). In determining whether granting relief would constitute "abuse" under Section 707(b)(1), courts shall presume that abuse exists if:

> ... the debtor's current monthly income reduced by [the deductions specified in subsections (ii), (iii), and (iv),] multiplied by 60 is not less than the lesser of -
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>
> (II) $10,950.

11 U.S.C. § 707(b)(2)(A)(I).

Mrs. Accornero's disability retirements benefits should be included in the calculation of "current monthly income." In Blausey v. U.S. Trustee, 552 F.3d 1124 (9th Cir. 2009), the Ninth Circuit held that private disability insurance benefits did not fall within exceptions to "current monthly income" as defined by 11 U.S.C. § 101(10A)(B). Id. at 1132 -1134. On Debtors' Schedule I – Current Income of Individual Debtors, the Debtors characterized the $3115 as "CalPERS disability retirement." The Debtors have admitted in their testimony that the $3115 is to be received by Mrs. Acconero for the rest

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3)                                                    - 3 -

of life for her permanent disability as a former police officer. The U.S. Trustee contends that Mrs. Accornero's benefits should receive the same treatment as the private disability benefits in Blausey case, that is the benefits should be counted in "current monthly income."

Including the $3115 in the Debtors' income results in the presumption of abuse.

### B. No Known "Special Circumstances" Rebut The Presumption.

In a Section 707(b)(2) proceeding, the presumption of abuse may only be rebutted by evidence of "special circumstances, such as a serious medical condition or a call to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(I). The Debtors have offered no evidence of special circumstances that could justify any additional expenses or adjustments to income.

### C. The Totality of the Circumstances of Debtor's Financial Condition Demonstrates an Abuse of Chapter 7 Because They Have the Ability to Pay Creditors By Making Minor Adjustments to Their Budget.

Independent of the determination of whether the presumption of abuse arises under Section 707(b)(2), a case may also be dismissed under Section 707(b)(3)(B) where the totality of the circumstances of the debtor's financial situation demonstrates an abuse of chapter 7. 11 U.S.C. § 707(b)(3)(B). See also In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006) (chapter 7 case can be dismissed for "abuse" under § 707(b)(3) even if abuse is not presumed as a result of the Means Test); see also In re Paret, 347 B.R. 12, 15 (Bankr. D. Del. 2006) (the "shall" directive in § 707(b)(3) "explicitly mandates" consideration of the totality of the circumstances to determine whether abuse exists if the § 707(b)(2) presumption does not arise or is rebutted).

The standard by which abuse is measured under Section 707(b)(3)(B) is the totality of the circumstances of a debtor's financial condition. The inquiry into the circumstances of a debtor's financial condition is a factual one that requires the court to consider the totality of a debtor's financial condition. In re Lamug, 403 B.R. 47 (Bankr. N.D. Cal. 2009); In re Baeza, 398 B.R. 692 (Bankr. E.D. Cal. 2008). Prior to the enactment of BAPCPA, the ability to pay was measured by a debtor's ability to

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3) - 4 -

Case: 10-13676    Doc# 21-1    Filed: 12/08/10    Entered: 12/08/10 13:56:46    Page 4 of 8

pay his or her creditors under a hypothetical chapter 13 plan. See In re Kelly, 841 F.2d 908 (9th Cir. 1988) and In re Price, 353 F.3d 1135 (9th Cir. 2004). However, there is no textual support for reading section 707(b)(3)(B) as hinging a finding of abuse on whether the debtor can fund a chapter 13 plan. In re Baeza, 398 B.R. 692 (Bankr. E.D. Cal. 2008). To the contrary, the default remedy for abuse under section 707(b)(3)(B) is dismissal, not conversion. See 11 U.S.C. § 707(b)(1).

In Lamug, Judge Efremsky dismissed a chapter 7 case where the debtors had the ability to pay their creditors under the totality of the circumstances holding that the phrase "totality of the circumstances" continued to have the same meaning post-BAPCPA and that "the ability to pay, standing by itself, remains a sufficient ground to support a finding of abuse under post-BAPCPA § 707(b)(3)(B)." In re Lamug, 403 B.R. at 55. The courts in Lamug and Baeza both considered the pre-BAPCPA factors set forth in In re Price, 353 F.3d. 1135 (9th Cir. 2004), which require a case-by-case analysis of the debtor's actual financial situation or condition. In re Lamug, 403 B.R. at 54-55; In re Baeza, 398 B.R. at 696 and 697-8.

Calculation of Excess Funds. Debtors have the ability to pay creditors. With very minor adjustments to the Debtors' budget, as reflected in Schedules I and J, the U.S. Trustee calculates, at a minimum, that the Debtors have at least $1,083 per month in excess of necessities.

Some minor adjustments would include the following[1]:

(1) Toys. Debtors have indicated an intent to keep paying monthly secured debt on several recreational vehicles: 2005 Eclipse Attitude Travel Trailer ($215); 2008 Kawasaki 4 wheel ($132); 2007 Yamaha dirt bike ($198), a total monthly amount of $545.

(2) Recreation. Debtors' budget includes expenses which, when added together, appear to include substantial discretionary cushion. For example, Debtors listed under "Other Expenditures" miscellaneous expenses in a monthly total amount of $508, in addition to

---

[1]The U.S. Trustee reserves the right to conduct more formal discovery. The Debtors have provided some documentation of some expenses, but the U.S. Trustee did not conduct full blown formal discovery in reliance upon statements by counsel that the Debtors would be converting this case to a case under chapter 13.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3) - 5 -

recreation claimed (Schedule J, Line 9) in the amount of $195. The amounts in this category total $703. Cutting this expense in half would not appear to seriously impair the Debtors' needs, especially given the excess in other categories of expenses.

(C) <u>Telephone/Internet</u>. In addition to claiming $95 for telephone, the Debtors also claim an additional $180 per month for "internet/TV/house phone." The monthly amount of $275 appears high for this category of expense. While the calculation below did not deduct this expense from the household budget, this expense illustrates the cushion which appears to be built into the Debtors' budget.

(D) <u>Deductions from income</u> - Voluntary 457 plan - $108. The U.S. Trustee contends that the Debtors could cease voluntary contributions for five years without hardship.

By adding the voluntary contribution amount of $108 to $10,776 (Line 16 of Schedule I), the U.S. Trustee has adjusted Debtors' monthly income to $10,884. By eliminating luxury items on Schedule J ($545 + ½ of the total recreational amount – $350), the U.S. Trustee has reduced monthly expenses by $895, resulting in total monthly expenses of $9801.

While the U.S. Trustee contends that there is room for further reductions and reserves the right to conduct further discovery, it is apparent that the Debtors have excess funds available to pay creditors. The minor adjustments result in available funds as follows:

    Adjusted income:          $10,884
    Adjusted expenses:       9,801
    <u>Adjusted available funds:</u>   $ 1,083

In a sixty month plan, $1,083 per month would result in total dividends of $64,980, a 63% distribution to creditors based upon total unsecured debt of $102,331.

<u>Excess Spending.</u> A review of Debtors' expenses in the months preceding their bankruptcy filing also shows that the Debtors were accustomed to spending a considerable amount of their budget on recreational items, with no apparent hardship on other expenses since the Debtors intend to keep their home and all of their recreational vehicles.

A review of Debtors' credit card statements shows that in the six months before the filing,

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3)     - 6 -

Case: 10-13676   Doc# 21-1   Filed: 12/08/10   Entered: 12/08/10 13:56:46   Page 6 of 8

Debtors took a number of vacations or trips to Las Vegas, campgrounds, and generally expended significant sums on recreational expenses, an amount inconsistent with individuals who were experiencing financial hardship. The following are examples of the type of expenses and the recurring nature of recreational expenses observed by reviewing just one of Debtors' credit card statements:

| Date | Expense | Amount |
|------|---------|--------|
| 9/4/10 | Willits KOA | $ 139 |
| 9/27/10 | Wine club | 100 |
| 8/7/10 | Maylons Brewing | 145 |
| 7/24/10 | Trinity KOA | 202 |
| 7/31/10 | New York New York Las Vegas | 77 |
| 8/14/10 | Clos Du Bois Winery | 170 |
| 8/17/10 | Comcast | 337 |
| 4/22/10 | Quality Inn - Mountainview | 519 |
| 5/9/10 | Wynn Las Vegas | 540 |
| 3/20/10 | Lions Gate | 425 |
| 4/15/10 | Quality Inn | 519 |
| 3/21/10 | New York New York Las Vegas | 351 |
| | Total | $3,524 |

While the identified excessive expenses may explain Debtors' financial difficulties, the U.S. Trustee intends to conduct further discovery to ascertain the extent of spending as it may suggest actual ability to repay creditors, or other abuse, including bad faith.

**III. CONCLUSION**

This case is presumed abusive and the Debtors have offered no evidence of special circumstances. Dismissal is also appropriate under the totality of the circumstances of the Debtors' financial situation because they have the apparent ability to pay creditors with ease, have stable income and employment. Thus, this case is an abuse of the provisions of chapter 7 and should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3)                                      - 7 -

Case: 10-13676   Doc# 21-1   Filed: 12/08/10   Entered: 12/08/10 13:56:46   Page 7 of 8

WHEREFORE, the U.S. Trustee requests the Court enter an order dismissing this case.

Dated: December 8, 2010

Respectfully submitted,

AUGUST B. LANDIS
Acting United States Trustee

By: _/s/ Donna S. Tamanaha_
Donna S. Tamanaha
Assistant U.S. Trustee

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1),(b)(2) and (b)(3)

- 8 -